IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION


- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA, :
                          :
        Plaintiff,        :
                          :
vs.                       :          Case No. 3:25-cr-70
                          :
JACK JAMES ERSELIUS,      :     TRANSCRIPT OF CHANGE OF PLEA
                          :
        Defendant.        :
- - - - - - - - - - - - - - X


                              Courtroom 242, Second Floor
                              U.S. Courthouse
                              131 East Fourth Street
                              Davenport, Iowa
                              March 5, 2026
                              1:29 p.m.


BEFORE:  THE HONORABLE STEPHEN B. JACKSON, JR., Chief Magistrate
Judge


APPEARANCES:

For the Plaintiff:        KAITLYN R. MACAULAY, ESQ.
                          United States Attorney's Office
                          131 East Fourth Street, Suite 310
                          Davenport, IA  52801


For the Defendant:        ALFREDO G. PARRISH, ESQ.
                          Parrish Kruidenier Law Firm
                          2910 Grand Avenue
                          Des Moines, IA  50312


                 Present via videoconference:
              TONYA R. GERKE, CSR, RDR, CRR
                  United States Courthouse
              111 Locust Street, Room 521
                 Des Moines, IA 50309

<u>P R O C E E D I N G S</u>

(In open court.)

THE COURT:  Counsel, ready to proceed?

MS. MACAULEY:  Yes, Your Honor.

MR. PARRISH:  Yes, Your Honor.

THE COURT:  Good afternoon.  This case is United States of America versus Jack James Erselius.  This is Case Number 3:25-cr-70.  We're present today for a change of plea hearing.

The Government's represented by Assistant U.S. Attorney Kaitlyn Macaulay.  Mr. Erselius appears personally, and he is present with his attorney, Alfredo Parrish.

Mr. Erselius, I'm United States Magistrate Judge Stephen Jackson, Junior.  I remind you of who I am because I haven't seen you for a number of months.  I also, importantly, remind you of the type of judge I am.  The reason I do that is because your case is also assigned to a District Judge.  For you that's Judge Stephen Locher.  I tell you that because you have the right to have a District Judge preside over any guilty plea hearing.  As a Magistrate Judge, I can preside over this hearing but only with your voluntary consent.

And so, Mr. Erselius, I need to confirm.  Do you agree this guilty plea hearing may be conducted by me?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you also sign a written consent today

to allow me to conduct this hearing?

THE DEFENDANT:  I did, Your Honor.

THE COURT:  Okay.  Mr. Parrish, did you sign that consent on behalf of your client?

MR. PARRISH:  I did, Your Honor.

THE COURT:  And, Ms. Macaulay, did you sign the consent for the Government?

MS. MACAULEY:  Yes, Your Honor.

THE COURT:  Thank you.  Thank you.  That will be filed with our clerk.

Mr. Erselius, even though I will conduct this guilty plea hearing, your sentencing hearing will still be conducted by Judge Locher.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And before I can recommend to Judge Locher that he accept guilty pleas from you, I need to ask you certain questions, and your answers to those questions need to be under oath, so at this time I'd ask that you please stand, do your best to raise your right hand, and our clerk will give you an oath.

(Defendant sworn.)

THE COURTROOM DEPUTY:  Thank you.

THE COURT:  You may be seated.

Mr. Erselius, you are now under oath.  You need to know

that if you make any false statements, you may be prosecuted for the crime of perjury and/or the crime of making a false statement.  Those are two separate crimes.

Do you understand you are now under oath, and you are required to tell the truth?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  Would you please state your full name.

THE DEFENDANT:  My name is Jack James Erselius, Your Honor.

THE COURT:  How old are you?

THE DEFENDANT:  I'm 20 years old.

THE COURT:  How far did you go in school?

THE DEFENDANT:  I completed some college, Your Honor.

THE COURT:  Do you have any difficulty reading or understanding the English language?

THE DEFENDANT:  I do not, Your Honor.

THE COURT:  It's very important you understand everything we do here today, so at any time during this hearing if something comes up you don't understand, maybe you don't hear something someone says, or if at any time you think you need to discuss something with Mr. Parrish -- if any one of those things happens, will you let me know about that right away?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Good.  Mr. Erselius, that is so important I am giving you permission to interrupt me or anyone else here

today if one of those things happens.  Will you do that if you need to?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  First I need to ask you some questions to be sure that you are able to understand your rights.

Mr. Erselius, have you ever suffered from depression, anxiety, or any other mental illness?

THE DEFENDANT:  I have not been diagnosed with those, Your Honor.

THE COURT:  Have you ever abused drugs or alcohol?

THE DEFENDANT:  I have not, Your Honor.

THE COURT:  Do you take any prescription medication?

THE DEFENDANT:  I never have, Your Honor.

THE COURT:  Do you know of any reason why you might have difficulty understanding these proceedings?

THE DEFENDANT:  I'm sorry.  Can you repeat the question?

THE COURT:  Sure.  Do you know of any other reason why you might have difficulty understanding these proceedings?

THE DEFENDANT:  I do not, Your Honor.

THE COURT:  Mr. Parrish, do you have any reason to believe your client might not be competent to enter a plea today?

MR. PARRISH:  We don't, Your Honor.  I want to point out for the record, though, that when I was first retained,

Mr. Erselius had started counseling at that point and therapy. I have all those notes. I've reviewed them. We've also hired an expert, and I've turned over the report to the Government, and the expert we hired, a doctor of psychology, indicated that there were no issues that shows that he could not understand the process and that he's fully competent. But he was in therapy, I know, specifically from January 2025 until he came into this court on the initial appearance.

Thank you.

THE COURT: Thank you.

Mr. Parrish, is your mike on?

MR. PARRISH: It is, Your Honor.

THE COURT: Okay. I don't know if you were standing a little further away from it --

MR. PARRISH: Thank you.

THE COURT: -- as you stood up -- and you certainly can, if you want to. It's your choice. You can remain seated when you're called on to respond today if you want to --

MR. PARRISH: Thank you.

THE COURT: -- or you can stand up.

MR. PARRISH: I will remain seated, Judge. Thank you.

THE COURT: Okay. Thank you very much.

So, Mr. Erselius, you've been charged by indictment in 15 counts. Count 1 charges receipt of child pornography, Count 2 charges possession of child pornography, and Counts 3 through 15

each charge a different instance of cyberstalking.

Have you had a chance to discuss those charges in detail with your attorney?

THE DEFENDANT:  I have, Your Honor.

THE COURT:  I've been advised that you want to change your previous plea of not guilty and that today you want to plead guilty to Count 1, Counts 3 and 4, Counts 6 and 7, and Counts 9 through 15, so that would be Count 9, Count 10, 11, 12, 13, 14, and 15.  Is that correct?

THE DEFENDANT:  That is, Your Honor.

THE COURT:  Before we go any further, I need to be sure you understand you are not required to enter any guilty plea today.  If you want, you can continue and persist in your plea of not guilty on all counts and go to trial.

Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Even though you understand that, do you still want to go forward today and plead guilty to Counts 1, 3, 4, 6, 7, 9, 10, 11, 12, 13, 14, and 15?

MR. PARRISH:  I would, Your Honor.

THE COURT:  Before I can recommend that Judge Locher accept those guilty pleas, I need to ask you additional questions to be sure you understand your rights.

First, you have the right to have a lawyer help and represent you at every stage of this case.  In your case, you

have hired Mr. Parrish to represent you.  Even though you've done that, you need to know that if you wanted to maintain your plea of not guilty and go to trial and if you could not afford an attorney, I would appoint an attorney to represent you at no cost to you.  That attorney would continue to represent you throughout that trial at no cost to you if you wanted to maintain your pleas of not guilty and go to trial.

Do you understand that?

THE DEFENDANT:  Understood, Your Honor.

THE COURT:  Do you have any questions about your right to an attorney in this case?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you generally satisfied with the advice, services, and representation you've received from your attorney in this case?

THE DEFENDANT:  I'm very satisfied, Your Honor.

THE COURT:  Good.  Is there anything that you have asked your attorney to do for you in this case he's not done for you?

THE DEFENDANT:  No.  He's been very satisfactory, Your Honor.

THE COURT:  Very good.  Mr. Erselius, I want to talk to you now about your trial rights.

You have the right to a speedy and public trial before a jury of 12 people selected from a cross-section of the

community.  Both you and your attorney would help choose the people who would serve on your jury.  Any verdict by the jury would have to be unanimous.  That means all 12 jurors would have to agree to the verdict.

Your jurors would promise under oath to try your case fairly based only on what is submitted into evidence at the trial and on the instructions given to them by Judge Locher.

Do you understand your right to a jury trial?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  You also have the presumption of innocence. Judge Locher would tell the jury you are presumed innocent.  He would tell the jury the presumption of innocence remains with you unless at the end of your trial the Government's convinced the jury of your guilt beyond a reasonable doubt.

Judge Locher would also tell the jury that the presumption of innocence by itself is enough for you to be found not guilty of these charges.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  You also have something called the right to confrontation.  What that means is that the Government would have to call its witnesses to testify under oath here in court. You would be able to see the witnesses as they testify, and they would be able to see you.  Your attorney would not have to question the Government's witnesses, but if he wanted to, he could confront them by cross-examining them.

Do you understand by pleading guilty, you're giving up your right to confront witnesses?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  You also have the right to present a defense.  The burden of proof remains on the Government throughout the trial.  You would not have to put on a defense or produce any evidence; however, if you wanted to, you could present any relevant evidence to the jury.  For example, you could make witnesses come to court by having subpoenas served on them.  If you could not afford to pay the costs necessary to serve those subpoenas or get your witnesses to court, I would make the Government pay those costs.

Do you understand by pleading guilty, you're giving up your right to present any defense?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Finally, you have the right to remain silent.  You could testify at the trial if you want to, but you would not have to.  If you decided not to testify, the prosecutor would not say anything about it to the jury.  In fact, Judge Locher would tell the jurors that you have a constitutional right not to testify, and he would also tell them they must not hold it against you if you do not testify.

Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Mr. Erselius, to summarize, if you plead

guilty today, you will not have a trial.  Instead, you'll be judged guilty based solely on your guilty pleas in the same way as if a jury had returned guilty verdicts against you.

Do you understand by pleading guilty, you're giving up your right to a jury trial?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  I need to check one thing, but in a moment I'm going to talk about the penalties which apply in your case, Mr. Erselius.  I apologize.  One moment.

Okay.  I want to talk to you now about the penalties which apply, Mr. Erselius.

On Count 1, you can be sent to prison for a term of up to 20 years, and there's a mandatory minimum prison sentence of at least 5 years.  Following your imprisonment, you can be placed on a term of supervised release for up to your life, and there's a mandatory minimum term of supervised release of at least 5 years.

In addition to both of those things, you can be fined up to $250,000, and on Count 1 you have to pay a mandatory special assessment of $100.  If the Court determines that you are a nonindigent person, it shall impose an assessment of $5,000 under Count 1.  In addition, the Court shall assess an additional assessment of not more than $35,000 under Count 1.  The judge also has the power to order forfeiture of property and restitution.

On each of the counts that you're pleading to, Counts 3, 4, 6, 7, 9, 10, 11, 12, 13, 14, and 15 -- on each of those counts, you can be sent to prison for a term of up to 5 years. Following your imprisonment, you can be placed on a term of supervised release for up to 3 years. In addition to both of those things, on each of those counts you can be fined up to $250,000, and you have to pay a mandatory special assessment of $100 on each of those counts. You also -- the judge can also order forfeiture of property and restitution on each of those counts.

Because you're pleading guilty to more than one count, you need to know that the judge has certain sentencing options. I know in the plea agreement you and the Government have agreed to a joint sentencing recommendation; however, that is not binding on the judge, on Judge Locher, and Judge Locher has certain sentencing options.

One of those options is to run your sentences concurrently or consecutively. Do you know the difference between those two types of sentences?

THE DEFENDANT: I do, Your Honor.

THE COURT: So you know a concurrent sentence means each sentence you receive on each count runs at the same time, and the consecutive sentence means the sentences that you receive run one after the other, so those can be stacked up if they're consecutive. Does that make sense?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And so I just want to make sure you understand that the maximum you face here is 20 years on Count 1 and 5 years on each of the 11 counts for a total of 55 years, so you could face a potential -- if all the sentences you receive are consecutive to each other and they're all the maximum, you could face a total of 75 years in prison.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The fine for each of the counts you're pleading guilty to is $250,000.  You could receive the maximum fine on all 12 counts you're pleading to, meaning that you'll have -- you could face a total of 3 million dollars in fines potentially.

Do you understand that as well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The special assessment of $100 is mandatory, so that means you will face a mandatory special assessment, and it's $100 per count, and so you have 12 counts, so you face a potential of -- you face a mandatory special assessment of $1,200 on these counts.

Do you understand that as well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions about the minimum and maximum penalties that may be imposed on this case?

THE DEFENDANT:  I do not, Your Honor.

THE COURT:  At the time of sentencing, Judge Locher performs a calculation under the Federal Sentencing Guidelines. Those are guidelines issued by the United States Sentencing Commission.  This calculation results in something called an advisory guideline range.  That is a range of months within which the sentencing commission suggests you be sent to prison. Judge Locher must consider this range in determining your sentence, but he is not required to sentence you within the range.

So long as the sentence he gives you is reasonable, he can depart from the advisory guideline range based on the factors listed in the sentencing guidelines, or he can vary from the range based on the factors listed in the sentencing statutes. So you could receive a sentence below or above the advisory guideline range.  In fact, you could receive a sentence all the way up to the maximum statutory sentence, which is 20 years on Count 1, 5 years on the other 11 counts, or 75 years if the maximums are all run consecutive.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You also need to know however the guideline range is calculated and regardless of whether Judge Locher departs or varies from the guidelines, he cannot sentence you below 5 years in prison on Count 1 even if he wanted to because

that is the statutory mandatory minimum.

The only exception to that is if you provide substantial assistance to the Government, the Government asks Judge Locher to sentence you below the minimum, and he grants that request. You need to know even if you believe you've provided substantial assistance, there's no guarantee the Government will file a departure motion or, even if it does, that the judge will grant it and sentence you below the minimum.

Do you understand all of that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Mr. Erselius, has anyone promised you that you will be eligible for a sentence of less than the mandatory minimum?

THE DEFENDANT:  There are no promises, Your Honor.

THE COURT:  You need to know you'll be in custody for all of any prison sentence you receive reduced only by credit for good time you may earn, and whatever sentence you do receive, you will not see a parole board or be paroled out of prison because there is no parole in the federal court system.

Do you have any questions about any of that?

THE DEFENDANT:  I don't, Your Honor.

THE COURT:  Mr. Parrish, have you given Mr. Erselius the benefit of your advice as to the potential range of punishment that you believe he realistically faces by pleading guilty?

MR. PARRISH:  We have, Your Honor.  We've reviewed the Government's calculations.  We did our own calculations.  I've reviewed the calculations with him, and I've given him by best opinion with regard to what he might be facing, Your Honor.

THE COURT:  Thank you.

Mr. Erselius, do you understand, however, the punishment is for Judge Locher to decide, and it might be different than what has been predicted for you by your attorney?

THE DEFENDANT:  I understand that, Your Honor.

THE COURT:  And do you also understand you cannot withdraw your guilty plea simply because your sentence ends up being different than what has been predicted for you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Erselius, are you a United States citizen?

THE DEFENDANT:  I am, Your Honor.

THE COURT:  Then you also need to know as a result of this conviction, you will be deprived of the right to vote, to serve on a jury, to hold public office, and to possess firearms and ammunition.

Do you understand the loss of rights associated with a felony conviction?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Once you have served your prison sentence, you'll be placed on supervised release.  During that time, your

conduct is monitored by a probation officer.

There are a number of standard conditions of supervised release. Those include that you cannot commit any federal, state, or local crimes nor can you possess firearms, ammunition, or illegal controlled substances. Judge Locher can also impose additional special conditions.

If you violate any of the conditions of your supervised release, it can be revoked, and you can be required to serve up to an additional 2 years in prison without any credit for time previously served.

Do you have any questions about the requirements of supervised release?

THE DEFENDANT: I don't, Your Honor.

THE COURT: Mr. Erselius, you need to know also as a result of this conviction, you would be required to register as a sex offender with the National Registry of Sex Offenders, and you likely will be required to register as a sex offender under the laws of the state where you live. These requirements for registration may be imposed upon you for the rest of your life.

Do you understand that?

THE DEFENDANT: I do, Your Honor.

THE COURT: Ms. Macaulay, has the Government complied with the applicable requirements of the Crime Victims' Rights Act in this case?

MS. MACAULEY: Yes, Your Honor.

THE COURT:  And, Mr. Erselius, you also need to know with respect to all counts, the Court can order restitution, and in particular with respect to Count 1, the Court shall order as restitution the full amount of the victims' losses incurred or reasonably projected to be incurred but in no event less than $3,000 per victim in Count 1.

Do you understand all of that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Ms. Macaulay, are there any additional collateral consequences to these guilty pleas that we should discuss today with Mr. Erselius?

MS. MACAULEY:  None that I'm aware of, Your Honor.

THE COURT:  Mr. Parrish, are you aware of any others?

MR. PARRISH:  I am not, Your Honor.

THE COURT:  The next thing I need to discuss with you, Mr. Erselius, before I can recommend to Judge Locher that he accept your guilty pleas is that I must establish that there are facts which would support a conviction in this case.

Count 1 of the indictment charges you with receipt of child pornography, and Counts -- the other 11 counts you're pleading guilty to today each charge you with a count of cyberstalking. I'm going to have Ms. Macaulay recite to you the elements of those offenses that the Government must prove beyond a reasonable doubt in order to obtain your conviction.

Ms. Macaulay.

MS. MACAULEY:  Yes, Your Honor.

Count 1, receipt of child pornography, has three elements: One, on or about the day alleged in the indictment, the defendant knowingly received digital computer files that contained multiple depictions of child pornography; two, the defendant knew that the visual depictions were of a minor engaging in sexually explicit conduct; and, three, the visual depictions were produced using materials that had been shipped or transported by computer in interstate or foreign commerce.

As to Counts 3, 4, 6, 7, 9, 10, 11, 12, 13, 14, and 15, cyberstalking, there are three elements the Government would have to prove:  One, defendant used any interactive computer service, any electronic communication service, electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct; two, defendant used -- defendant used an interactive computer service, any electronic communication service, electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce with the intent to harass, intimidate, or place under surveillance with the intent to injure, harass, or intimidate another person; and, three, in the course of that conduct, defendant engaged in conduct that caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that person.

THE COURT:  In addition, for all counts, the Government

must prove some or all of the activity occurred in the Southern District of Iowa. All of the elements must be proven by the Government beyond a reasonable doubt.

Mr. Parrish, is that an accurate recitation of the elements of each of the charges to which your client intends to plead guilty today?

MR. PARRISH: It is, Your Honor.

THE COURT: Do you believe that Mr. Erselius understands the elements of the charges against him?

MR. PARRISH: I do, Your Honor. We've reviewed it several times, and I've met with him as late as today and last weekend, I think, and we've discussed this in great detail, Your Honor, and I think he does understand each and every element that's required.

THE COURT: Thank you.

So, Mr. Erselius, I understand that you've entered into an Amended Plea Agreement with the Government; is that correct?

MR. PARRISH: Amended -- judge, I think what we did is resign the one that was missing number 15. It was in the original, but we just signed a new one.

THE COURT: I thought it was styled -- captioned Amended Plea Agreement because a previous Plea Agreement had been filed.

MS. MACAULEY: That is correct, Your Honor.

MR. PARRISH: Let me just double-check. I have it

here.

THE COURT:  Okay.

MR. PARRISH:  It could have been filed as an amendment. We got it as a -- as a Plea Agreement.  That's -- okay.  That's fine.

THE COURT:  So Mr. Erselius signed an Amended Plea Agreement; is that correct?

MR. PARRISH:  That is correct, Judge.

THE COURT:  Okay.  Is that correct, Mr. Erselius?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you have a copy in front of you?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  I want to draw your attention to page 20 -- two pages; first, page 15.  Are you there?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you see in the middle of that page, there's a line?  Below the line is a typewritten name, and above it is a signature.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is that your signature?

THE DEFENDANT:  It is, Your Honor.

THE COURT:  What's the date you signed this?

THE DEFENDANT:  March 3rd -- or March 5th, 2026.

THE COURT:  That would be today's date?

THE DEFENDANT:  Correct, Your Honor.

THE COURT:  And then also these same questions I'm going to ask you on page 27.  Please turn to that page.  Are you there?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Again in the middle of the page, there's a line.  Below that line is your typewritten name, and above it is a signature.  Do you see that?

THE DEFENDANT:  I do.

THE COURT:  Is that your signature?

THE DEFENDANT:  It is, Your Honor.

THE COURT:  What's the date you signed Attachment A on page 27?

THE DEFENDANT:  March 5th, 2026.

THE COURT:  Again today; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Before you signed the Amended Plea Agreement and the Attachment A, Stipulation of Facts, did you review those documents -- both of those documents in detail with your attorney?

THE DEFENDANT:  I have, Your Honor.

THE COURT:  Do you understand all of the terms of the Amended Plea Agreement and all of the facts set forth in Attachment A, Stipulation of Facts?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Do you have any questions about the Amended

Plea Agreement or the Stipulation of Facts that you have reached and signed with the Government?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Parrish, are those your signatures above your name on pages 16 and 27?

MR. PARRISH:  It is my signature, Your Honor, in both places.  Thank you.

THE COURT:  And, Ms. Macaulay, who signed the Plea Agreement on page 16 and Stipulation A on page 27 for the Government?

MS. MACAULEY:  I did, Your Honor.  On the amended one I did, Your Honor.

THE COURT:  Yes.  I understand.  Thank you.

Mr. Parrish, would you please discuss the process by which you and your client reviewed and executed the Amended Plea Agreement and the Attachment A, Stipulation of Facts.

MR. PARRISH:  I will, Your Honor.

Initially we received it after great discussion with the Government.  I met in person with Mr. Erselius beforehand.  We had a telephone conference where I reviewed the agreement with him.  He was at the facility, and from there I came down on a Sunday afternoon.  We went through it in detail.  I then -- we signed off on it.

We later discovered there was a mistake on 15 -- even though the elements were, in fact, included in that, we had gone

through 15.  He understood that 15 was going to be something that we had agreed to.

When the Court notified us of the error in that, we had a telephone conference.  I came down earlier today.  The marshal got Mr. Erselius into a meeting room with me.  We went through it again.  I specifically pointed out -- even though I had done it over the phone, I went through it again, and he signed off on the amended agreement today.  But he was aware of 15 when I came down on Sunday afternoon to visit with him at the facility where he was being held.

Thank you.

THE COURT:  Thank you.

Mr. Erselius, you heard what Mr. Parrish has said?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is all of that true and correct?

THE DEFENDANT:  It is, Your Honor.

THE COURT:  All right.  I have a couple of questions about the plea agreement before I get to the part where I'm going to ask you about the facts, Mr. Erselius.

So, Counsel, page 2, the top partial paragraph references dismissal of Counts 2, 5, and 8 and then references the conduct supporting the charges in Counts 2, 3, and 8 will be considered. Is that a typo on Count 3?

MS. MACAULEY:  Yes, Your Honor.  It should say Counts 2, 5, and 8 to be uniform with the rest of that

paragraph.

THE COURT:  Thank you.

Mr. Parrish, do you agree?

MR. PARRISH:  I do.

THE COURT:  Okay.  I think our clerk has the original Amended Plea Agreement.  You can make that change right now, if you would, please, and initial that.

MR. PARRISH:  I will.

Judge, while she's doing that, I will add that I did meet with Mr. Erselius's father and his grandfather, Mr. Kivi, for about an hour and a half where we discussed the plea and the proposed plea and what it would look like.

THE COURT:  Thank you.

MR. PARRISH:  Thank you.  And that was in my office. Thank you.

THE COURT:  Okay.  Thank you.

The next question about the plea agreement.  Paragraph A(1) on page 1 as it relates to the cyberstalking violations indicates those are violations of Title 18, U.S. Code sections 2, 2261A(2)(A), 2261A(2)(B), and 2261(b).  2261(b) sets the penalties for those violations; correct?

MS. MACAULAY:  That's correct, Your Honor.

MR. PARRISH:  That's correct, Your Honor.

THE COURT:  Okay.  And then 2261A(2)(A) and (2)(B), those are alternatives for violations; is that correct?

MS. MACAULEY:  Correct, Your Honor.

THE COURT:  I want to confirm that from the review of the elements set forth and the factual basis, the parties are proceeding under 2261A(2)(B); is that right?

MS. MACAULEY:  Let me confirm, Your Honor, just to make sure.

THE COURT:  Okay.

MS. MACAULEY:  I believe that's right, though.

MR. PARRISH:  I think that's right.

THE COURT:  That's the causing substantial emotional distress, and I believe (2)(A) is referencing fear of harm, physical danger.

MS. MACAULEY:  Correct.  Yes, Your Honor.

MR. PARRISH:  I think that's accurate, Your Honor.

THE COURT:  Okay.  So I'll reference only (2)(B).

MS. MACAULEY:  That's fine, Your Honor.

THE COURT:  Okay.  And then in section 2's reference, that's aiding and abetting.  You're not proceeding under that theory?

MS. MACAULEY:  Correct.

THE COURT:  Okay.  I understand the attempt part, but that's different than aiding and abetting.

MS. MACAULEY:  Yes.

THE COURT:  There's no suggestion that Mr. Erselius was anything but the principal; is that right?

MS. MACAULEY:  That's correct, Your Honor.

MR. PARRISH:  That's correct and my thought too, Judge.

THE COURT:  Okay.  Okay.  I just wanted to be clear about that.  Very good.

Okay.  So now, Mr. Erselius, we need to talk about the facts in this case.  Are you ready to do that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  First, I want you to turn to page 17, which is entitled Attachment A, Stipulation of Facts.

Are you there?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And Attachment A is comprised of pages 17 through 27, and it has paragraphs numbered 1 through 41.  Do you see all of that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Excuse me.

Mr. Erselius, do you understand that when you signed Attachment A titled Stipulation of Facts, by signing that you were admitting all of the facts and information set forth in paragraphs 1 through 41 of that stipulation were true and correct?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  In fact, is all the information in Attachment A, Stipulation of Facts, paragraphs 1 through -- the information in paragraphs 1 through 41 true and correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now I need to break that down a little bit and talk about each count; okay, Mr. Erselius?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  On Count 1, do you admit on or about January 8, 2025, in the Southern District of Iowa, you knowingly received child pornography in the form of digital computer files via online Discord social media accounts?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  Do you admit that?

THE DEFENDANT:  I do, Your Honor.  I admit.

THE COURT:  And do you admit that those files had been transported in and affecting interstate and foreign commerce by any means including a computer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you admit that those files contained multiple visual depictions of child pornography?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Do you admit that you knew those visual depictions were of a minor engaging in sexually explicit conduct?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Do you admit those visual depictions were produced using materials that had been shipped or transported by computer in interstate or foreign commerce?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that some or all of your activity in this regard occurred in the Southern District of Iowa; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I'm going to break this down, Counsel, because there's so many counts, and I'm going to confirm a factual basis for each count after each of the ones.  I typically wait till the end.

Ms. Macaulay, have I established an adequate factual basis for a guilty plea to Count 1?

MS. MACAULEY:  You have, Your Honor.

THE COURT:  And, Mr. Parrish, do you agree?

MR. PARRISH:  Yes, Your Honor, I do.

THE COURT:  Let's talk about Count 3 now, Mr. Erselius.

Do you admit that on or about December 28, 2024, and continuing to about January 6, 2025, while you were in the Southern District of Iowa you used an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct with the intent to injure, harass, intimidate, and place under surveillance with the intent to injure, harass, and intimidate Victim 1?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you admit that your course of conduct

caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Victim 1?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that's set forth -- the course of conduct is set forth in paragraphs 5, 6, and 7; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Does that establish an adequate factual basis for a guilty plea to Count 3, Ms. Macaulay?

MS. MACAULEY:  Yes, Your Honor.

THE COURT:  Mr. Parrish, do you agree?

MR. PARRISH:  I agree, Your Honor.

THE COURT:  Count 4.  Mr. Erselius, do you admit on or about November 7th, 2024, and continuing to about December 19th, 2024, while you were in the Southern District of Iowa you used an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct with the intent to injure, harass, intimidate, and place under surveillance with the intent to injure, harass, and intimidate Victim 2?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you admit that your course of conduct caused, attempted to cause, and would reasonably be expected to cause emotional -- substantial emotional distress to Victim 2?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And your conduct is set forth -- in that regard is set forth in paragraphs 9 and 10; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Ms. Macaulay, have we established an adequate factual basis for a guilty plea to Count 4?

MS. MACAULEY:  Yes, Your Honor.

THE COURT:  Mr. Parrish, do you agree?

MR. PARRISH:  I agree, Your Honor.

THE COURT:  Let's talk about Count 6 now, Mr. Erselius.

Do you admit on or about October 31st, 2024, and continuing until about January 11th, 2025, you while in the Southern District of Iowa used an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct with the intent to injure, harass, intimidate, and place under surveillance with the intent to injure, harass, and intimidate Victim 4?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you admit that your course of conduct in this regard caused, attempted to cause, or would reasonably be expected to cause substantial emotional distress to Victim 4?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And is your conduct set forth in paragraphs 12 and 13 as it relates to Victim 4?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Ms. Macaulay, have I established an adequate factual basis for a guilty plea to Count 6?

MS. MACAULEY:  Yes, Your Honor.

THE COURT:  Mr. Parrish, do you agree?

MR. PARRISH:  I agree, Your Honor.

THE COURT:  Count 7, Mr. Erselius.  Do you admit that on or about December 28, 2024, and continuing to about January 1, 2025, while in the Southern District of Iowa you used an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct with the intent to injure, harass, intimidate, and place under surveillance with the intent to injure, harass, and intimidate Victim 5?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you admit that your course of conduct as it relates to Victim 5 caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Victim 5?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And are the specifics of your actions in regard to Victim 5 set forth in paragraphs 15 and 16?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Ms. Macaulay, have I established an adequate factual basis for a guilty plea to Count 7?

MS. MACAULEY:  Yes, Your Honor.

THE COURT:  Mr. Parrish, do you agree?

MR. PARRISH:  I agree, Your Honor.

THE COURT:  On Count 9, Mr. Erselius, do you admit on or about December 28, 2024, and continuing to about January 1, 2025, while in the Southern District of Iowa you used an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct with the intent to injure, harass, intimidate, and place under surveillance with the intent to injure, harass, and intimidate Victim 7?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  As it relates to Victim 7 and your course of conduct, did you cause, attempted to cause -- did your course of conduct cause and attempt to cause and would reasonably be expected to cause substantial emotional distress to Victim 7?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is your conduct as it relates to Victim 7 set forth in paragraphs 18 and 19?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is that an adequate factual basis for Count 9, Ms. Macaulay?

MS. MACAULEY:  Yes, Your Honor.

THE COURT:  Do you agree, Mr. Parrish?

MR. PARRISH:  I agree, Your Honor.

THE COURT:  Count 10.  Mr. Erselius, do you admit on or about December 28, 2024, and continuing to about January 1, 2025, while in the Southern District of Iowa you used an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct with the intent to injure, harass, intimidate, and place under surveillance with the intent to injure, harass, and intimidate Victim 8?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you admit your course of conduct caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Victim 8?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is your conduct as it relates to Victim 8 specified in paragraphs 21 and 22?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is that an adequate factual basis for Count 10, Ms. Macaulay?

MS. MACAULEY:  Yes, Your Honor.

THE COURT:  Do you agree, Mr. Parrish?

MR. PARRISH:  I agree, Your Honor.

THE COURT:  Count 11.  Mr. Erselius, do you admit on or about December 28, 2024, and continuing to about January 1,

2025, while in the Southern District of Iowa you used an electronic communication service, electronic communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct with the intent to injure, harass, intimidate, and place under surveillance with the intent to injure, harass, and intimidate Victim 9?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you admit Victim 9 was a minor at that time?

THE DEFENDANT: Can you repeat the question?

THE COURT: Yes. Do you admit Victim 9 was a minor at that time?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you admit that the course of conduct caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Victim 9?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is your conduct specifically set forth concerning Victim 9 in paragraphs 24 and 25?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Ms. Macaulay, is that an adequate factual basis for the guilty plea to Count 11?

MS. MACAULEY: Yes, Your Honor.

THE COURT: Mr. Parrish, do you agree?

MR. PARRISH:  Yes, Your Honor, I agree.

THE COURT:  Count 12.  Mr. Erselius, do you admit on or about December 28, 2024, and continuing to about January 1st, 2025, while in the Southern District of Iowa you used an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct with the intent to injure, harass, intimidate, and place under surveillance with the intent to injure, harass, and intimidate Victim 10?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you admit your course of conduct caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Victim 10?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Is your conduct concerning Victim 10 set forth in paragraphs 27 and 28?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Ms. Macaulay, is that an adequate factual basis for a guilty plea to Count 12?

MS. MACAULEY:  It is, Your Honor.

THE COURT:  Mr. Parrish, do you agree?

MR. PARRISH:  I agree, Your Honor.

THE COURT:  Count 13.  Mr. Erselius, do you admit on or about December 28, 2024, and continuing to about January 1,

2025, while in the Southern District of Iowa you used an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct with the intent to injure, harass, intimidate, and place under surveillance with the intent to injure, harass, and intimidate Victim 11?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you admit that your course of conduct caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Victim 11?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is your conduct concerning Victim 11 set forth in paragraphs 30 and 31?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Ms. Macaulay, is that an adequate factual basis for a guilty plea?

MS. MACAULEY:  For Count 13 it is, Your Honor.

THE COURT:  For Count 13.

Mr. Parrish, do you agree?

MR. PARRISH:  I agree, Your Honor.

THE COURT:  Moving on to Count 14, Mr. Erselius, do you admit on or about October 31st, 2024, and continuing to about January 11th, 2025, while in the Southern District of Iowa you used an electronic communication service, an electronic

communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct with the intent to injure, harass, intimidate, and place under surveillance with the intent to injure, harass, and intimidate Victim 12?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did your course of conduct -- do you admit your course of conduct caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Victim 12?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is your conduct concerning Victim 12 set forth in paragraphs 33 and 34?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Ms. Macaulay, is that an adequate factual basis for a guilty plea to Count 14?

MS. MACAULEY:  Yes, Your Honor.

THE COURT:  Mr. Parrish, do you agree?

MR. PARRISH:  I agree, Your Honor.

THE COURT:  Mr. Erselius, do you admit on Count 15 on or about December 28th, 2024, and continuing to about January 1, 2025, while in the Southern District of Iowa you used an electronic communication service, an electronic communication system of interstate commerce, and a facility of interstate and foreign commerce to engage in a course of conduct with the

intent to injure, harass, intimidate, and place under surveillance with the intent to injure, harass, and intimidate Victim 13?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you admit your course of conduct caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Victim 13?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is that specific conduct concerning Victim 13 -- your specific conduct set forth in paragraphs 36 and 37?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you use an Apple iPhone Pro Max and an Apple MacBook Model A2681 Max to effectuate your actions relating to all of the counts we have discussed?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Ms. Macaulay, did I provide an adequate factual basis for a guilty plea to Count 15?

MS. MACAULEY:  Yes, Your Honor.

THE COURT:  Mr. Parrish, do you agree?

MR. PARRISH:  I agree, Your Honor.

THE COURT:  Just to confirm, Ms. Macaulay, did I provide an adequate factual basis for a guilty plea to all counts that we've discussed today?

MS. MACAULEY:  Yes, Your Honor.

THE COURT:  Mr. Parrish, do you agree as to all counts?

MR. PARRISH:  I do, Your Honor.

THE COURT:  And in this case, Mr. Parrish, have you had full access to the Government's discovery?

MR. PARRISH:  Yes, Your Honor.  The record should reflect that we received the discovery early on.  I came down and reviewed it.  One of my associates, Andrew Wendel, came down to review the discovery.  We retained the services of an expert who we worked out an agreement with the Government to have that expert review it with the Detective Lord, I believe, in Iowa City, and then I received a report from him.  I'm not sure I shared that report -- I may have -- with the Government already, but we had more than adequate time to review all of the discovery, Your Honor, and have our expert review it, and I reviewed those findings with Mr. Erselius also.

THE COURT:  Thank you.

Mr. Parrish, do you believe those discovery materials also support a factual basis for a guilty plea to all of the counts in the Amended Plea Agreement?

MR. PARRISH:  They do, Your Honor.  We explored a couple of issues with our expert with regard to defenses, but we thought -- and I think everyone's in agreement -- that the plea was his best option to resolve this case, but I believe, as you proposed, Your Honor -- propounded that the discovery does establish a factual basis for the plea.

THE COURT:  Mr. Parrish, do you know of any possible defenses to these charges which you have not considered and discussed with your client?

MR. PARRISH:  We looked, Judge, closely at the defense of a type of addiction that could lead to an issue of competence, reviewed that thoroughly with our expert who's an excellent expert, by the way, Dr. Pietz.  It was her opinion that she did not believe we could establish that type of defense.  Other than that, Your Honor, we had no additional defenses other than denial with regard to this case.

THE COURT:  Thank you.

I want to talk to you, Mr. Erselius, about one particular provision of the plea agreement.  Would you please turn to page 7, paragraph 16.  Are you there?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  You've reached an agreement with the Government whereby -- and this is set forth in paragraph 16 -- the Government agrees to recommend that any sentence of imprisonment imposed on the cyberstalking counts should run concurrent to the sentence of imprisonment imposed on Count 1 such that a total term of imprisonment for you not exceed 20 years.  Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And I want to make sure you understand this sentencing recommendation is not binding on the Court.  Do you

understand that?

THE DEFENDANT:  I understand that, Your Honor.

THE COURT:  And even though you have made a -- or the Government's agreed to make a sentencing recommendation, do you understand the final sentence is within the sole discretion of Judge Locher?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  Do you understand also Judge Locher is not required to accept the Government's recommendation as to the sentence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any questions about that at all?

THE DEFENDANT:  I do not, Your Honor.

THE COURT:  Mr. Erselius, I want to make sure you know and understand once your guilty pleas are accepted by Judge Locher, you will have no right to withdraw those guilty pleas.  Do you have any questions about that?

THE DEFENDANT:  No.  I understand, Your Honor.

THE COURT:  If you plead guilty today, I will order something called a presentence investigation.  That requires a probation officer to conduct a thorough investigation of this case and to prepare a draft presentence report.  A copy of that draft report will be sent to both attorneys.

When Mr. Parrish gets the report, go through it with him

carefully.  Tell him about mistakes you find or important things you believe have been left out.  He will tell the probation officer about those things, and the report can be revised, if necessary, to make sure that it is complete and accurate.

Once the report is finalized, it is sent to Judge Locher, and you will then have a sentencing hearing.  At that hearing the parties can present witnesses and exhibits on any sentencing issue.  In addition, at that hearing you have the right to speak directly to Judge Locher to tell him anything you want him to know as he makes his sentencing decision.  Although you have the right to speak directly to him at that time if you want to, you also have the right to choose not to say anything to him if you do not want to.

Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Do you have any questions about the sentencing procedure?

THE DEFENDANT:  I do not, Your Honor.

THE COURT:  You also need to know that both the draft and final presentence reports are sealed documents.  You shall not disclose any part of either report or their contents to anyone other than your attorney.  If you do so, you can be prosecuted for contempt of court.

Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Mr. Erselius, I want to talk to you now about your rights to appeal in this case.  Would you please turn to paragraph 28 on page 13.  Are you there?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Generally both you and the Government have the right to appeal your conviction and sentence to the Eighth Circuit Court of Appeals.  In your case, however, as part of your plea agreement, you have waived many of your rights to appeal except under the limited circumstances set forth in paragraph 28.  That paragraph provides you waive all rights to appeal your conviction in this case including all motions, defenses, and objections that you could assert to the charges or the Court's entry of judgment against you except that both you and the Government reserve the right to appeal any sentence imposed to the extent it is authorized by law.

Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  This paragraph also provides that you waive all rights to contest your conviction and sentence in what are called post-conviction proceedings except that you keep the right to appeal or seek post-conviction relief based on grounds of ineffective assistance of counsel or prosecutorial misconduct.

Do you understand that as well?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Mr. Erselius, do you have any questions about the significant rights to appeal that you are giving up or the limited rights to appeal that you are keeping as part of your plea agreement?

THE DEFENDANT:  I do not, Your Honor.

THE COURT:  Mr. Erselius, has anyone forced or pressured you to plead guilty or made promises to get you to plead guilty other than those that are in the plea agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Parrish, do you believe a guilty plea in this case would be voluntary?

MR. PARRISH:  I do, Your Honor.

THE COURT:  Do you know of any legal reason why the plea should not be accepted?

MR. PARRISH:  I know of none, Judge.

THE COURT:  Do you know of anything I may have omitted that could affect the validity of this plea?

MR. PARRISH:  No.  I think you've been thorough and covered all of the pertinent issues, Judge.

THE COURT:  Ms. Macaulay, do you know of anything I may have omitted that could affect the validity of this plea?

MS. MACAULEY:  I do not, Your Honor.

THE COURT:  So, Mr. Erselius, you and I have just gone through a lot of information.  I want to make sure that you understand absolutely all of it because I don't want you to come

back at any time in the future and claim that you were confused or that someone forced you to plead guilty; okay?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So I want to confirm with you, Mr. Erselius.  Have you been able to understand absolutely everything we've discussed today?

THE DEFENDANT:  I have, Your Honor.

THE COURT:  Do you have any questions about any of it?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone forced or pressured you to plead guilty?

THE DEFENDANT:  No.  I did it voluntarily, Your Honor.

THE COURT:  I was going to ask you next are your guilty pleas today voluntary and your own decision?

THE DEFENDANT:  Yes, Your Honor.  I am guilty of the crimes I'm accused of.

I would like to apologize to all of the victims and their families that I have affected.  My actions were reckless.  They were selfless -- selfish, and I truly regret them.

I'd also like to thank my family and all my friends that have supported me through everything.  They've been a great support system, and I expect that from them for the rest of my life.

Thank you, Your Honor.

THE COURT:  Very good.

We need to now formally and for the record take your pleas, so, Mr. Erselius, would you please stand.

And so I'm going to have to go through a lot of explanations and so I'll ask you for your plea at the time, so I'm giving you a heads-up about that; okay, Mr. Erselius?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  So on Count 1, formally and for the record, how do you plead to Count 1 of the indictment charging receipt of child pornography, in violation of Title 18, U.S. Code sections 2252A(a)(2) and 2252A(b)(1)?  Guilty or not guilty?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  The next counts, Count 3, 4, 6, 7, 9, 10, 11, 12, 13, 14, and 15 all charge violations of cyberstalking, in violation of Title 18, U.S. Code section 2261A(2)(B) and 2261(b).

As it relates to Count 3, how do you plead to Count 3?  Guilty or not guilty?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  How do you plead to Count 4?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  How do you plead to Count 6?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  How do you plead to Count 7?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  How do you plead to Count 9?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  How do you plead to Count 10?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  How do you plead to Count 11?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  How do you plead to Count 12?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  How do you plead to Count 13?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  How do you plead to Count 14?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  And, finally, formally and for the record, how do you plead to Count 15?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  The record should reflect the defendant, Jack James Erselius, has pled guilty to Counts 1, 3, 4, 6, 7, 9, 10, 11, 12, 13, 14, and 15 in violation of the Code sections I have cited.

You may have a seat, sir.

Based on the record made today, my review of the materials submitted in connection with this hearing, and my observations of Mr. Erselius in open court as he responded to my questions, I find he is competent; he fully understands the charges against him; there is a factual basis for his pleas; he knows the

minimum and maximum punishments that may be imposed on this charge; he knows his jury rights, and he has voluntarily waived those rights.

I further find his decisions to plead guilty are knowing, voluntary, and not the result of any force, pressure, threats, or promises other than the promises made by the Government in the plea agreement.

I, therefore, conclude Mr. Erselius should be found guilty based upon his pleas of guilty.

I also determine the Government's established the requisite nexus between the offense and property it seeks in forfeiture.

I have signed and I am filing right now my report and recommendation recommending that Judge Locher accept Mr. Erselius's guilty pleas. Counsel will receive a copy of the report. The parties have 14 days to file objections. If no objection is made, Judge Locher may accept my recommendation and the guilty pleas of Mr. Erselius by simply entering a written order doing so.

I also order a presentence investigation. The deadlines for the report will be in an order from Judge Locher's chambers. The Government shall provide a written statement of the offense conduct in this case to probation and defense counsel by March 19th. Sentencing is set for July 8th, 2026, at 9 a.m. July 8th, 2026, 9 a.m.

Pursuant to the parties' agreement, pending sentencing the

prior order of detention remains in place.

MR. PARRISH:  Your Honor, you said July 8th, did you not?

THE COURT:  I said July 8th, 2026, 9 a.m.

MR. PARRISH:  Thank you, Judge.

THE COURT:  Yes.  You're welcome.

Ms. Macaulay, anything further for the Government?

MS. MACAULEY:  No, Your Honor.

THE COURT:  Mr. Parrish, anything else on behalf of your client?

MR. PARRISH:  No, Your Honor.  Thank you.

THE COURT:  Mr. Erselius, good luck.

THE DEFENDANT:  Thank you, Your Honor.  I appreciate it.

THE COURT:  We're adjourned.

(Off the record.)

THE COURT:  I'm sorry.  One other thing.  Let's go back on the record.  Just have a seat for a moment.

Today is the plea entry -- I'm sorry.  Monday is the plea entry deadline; is that correct?

MS. MACAULEY:  That's correct, Your Honor.  It's two weeks between the notice and entry deadline.

THE COURT:  Okay.  And I don't know that the notice deadline was complied with.

MS. MACAULEY:  I don't know that anything was filed by

defense regarding the notice.  I think it was the plea agreement that prompted.

THE COURT:  The plea entry deadline was February 23rd. It looks like the plea agreement was filed February 24th.

And, Mr. Parrish, just for the record --

MR. PARRISH:  I think -- I'm sorry.

THE COURT:  -- would you be requesting to extend that plea notification deadline, Judge?

MR. PARRISH:  We would, Judge, but I think there might be some communications directly with the Court.  I'm not sure if you were out of town, and I think Ms. -- Andrea handled it, but, no, I can file a motion to extend, Judge.

THE COURT:  I can take that now, if you wish.

MR. PARRISH:  All right.  Judge, we would move to extend the deadline to the date of the filing, but I know we were in in advance because I was meeting with him on a Sunday afternoon which he signed off on it and we sent it out that Monday which was the date, but we would ask that it be extended if there's some issue there, Judge.

THE COURT:  I understand.  There was no formal filing of a notice on the docket with the --

MR. PARRISH:  Gotcha.

THE COURT:  -- plea notification.

Any objection by the Government to extending the plea notification deadline to February 24th?

MS. MACAULEY:  No, Your Honor.

THE COURT:  Okay.  So granted.

MR. PARRISH:  Thank you, Your Honor.  Appreciate it.

THE COURT:  Anything else, Mr. Parrish?

MR. PARRISH:  I don't have anything further, Your Honor.

THE COURT:  Ms. Macaulay?

MS. MACAULEY:  No, Your Honor.

THE COURT:  Okay.  We're adjourned now.  Thank you.

THE DEFENDANT:  Thank you, Your Honor.

(Proceedings concluded at 2:36 p.m.)

C E R T I F I C A T E

I, Tonya R. Gerke, a Certified Shorthand Reporter of the State of Iowa and Federal Official Realtime Court Reporter in and for the United States District Court for the Southern District of Iowa, do hereby certify, pursuant to Title 28 U.S.C. Section 753, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated at Des Moines, Iowa, March 16, 2026.


/s/ Tonya R. Gerke
Tonya R. Gerke, CSR, RDR, CRR
Federal Official Court Reporter